UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TY BRUGGEMANN, *et al.*,

        Plaintiffs,

v.                                                      Case No. 8:09-cv-2562-T-30MAP

THE AMACORE GROUP, INC. *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        The Plaintiffs, pointing to a variety of Federal Rules of Civil Procedure (11, 26(e), 36(a)(6), and 37), move to strike the Defendants' answer and counterclaim or, alternatively strike the Defendants' supplemental discovery responses and portions of the Defendants' initial discovery responses (doc. 161). After I first denied this motion (doc. 172), the Plaintiffs successfully objected to the district judge, who reinstated the motion and directed me to consider its merits and issue a report and recommendation (*see* docs. 184 and 185). After consideration, I find sanctions unwarranted and recommend the motion be denied for the following reasons.

        A. *Perspective*

        The motion before me is about punishment. It is not about resolving a specific discovery dispute regarding an admission, interrogatory, or request to produce. Rather, it is one side's indictment of the other's alleged conduct. And more specifically, it is about whether the Defendants' behavior has been so egregious as to warrant the striking of their defenses and the dismissal of their counterclaims.

*B. Background*

With a sweeping brush, the Plaintiffs claim the Defendants have "attempted to deliberately, impermissibly and selectively supplement its discovery beyond the discovery end date" or have purposely withheld discovery to gain some tactical advantage over the Plaintiffs (doc. 161 at p. 22). The Defendants deny all this. Instead, the Defendants complain the Plaintiffs' (and more specifically their counsel) "misconstrue[], exaggerate[], and in some instances, completely misrepresent[] communications" pertaining to the matters referenced in the motion (doc. 201 at p. 2). This "he said, she said" pattern has, unfortunately, been a regular feature of this case. Regardless, determining who has abused the other more in discovery is a question I cannot answer with any conviction and one that is not particularly relevant.[1]

The pertinent procedural facts are, however, clear. As early as August 2010, the Plaintiffs considered the Defendants' discovery responses wanting. And the spate of "deficiency letters" they sent to the Defendants evidenced their displeasure: August 16, August 30, September 2, September 15, and September 17, 2010. On September 27, 2010, the Plaintiffs eventually moved to compel more complete discovery responses (doc. 120); this motion notably raises the same complaints about the same discovery responses that are subject of the instant motion for sanctions). The timing of the September 27 motion is particularly relevant. Because the district judge had entered an order (doc. 124) on October 7 dismissing counts 1, 2, 3, 5, 6, 7, and 9 of

---

[1] Magistrate Judge Baker, when faced with a motion that looks strikingly similar to this one, offered the parties before him succinct advice which is worth repeating here: "The purpose of the discovery rules is to facilitate resolution of cases on their merits with what is supposed to be an efficient self-executing or self-policed exchange of relevant information. Creation of satellite litigations or opportunities for seeking sanctions is not the goal of the process." *Swofford v. Eslinger,* 2009 WL 1025223 *1 (M.D. Fla. 2009).

the Complaint against Guy Norberg, and because one of Plaintiffs' attorneys (Gregg Trautmann) had retracted an agreement his co-counsel (Robert Trautmann) had reached with defense counsel (Angelina Whittington) in the meet and confer conference before the filing of the motion, I denied the motion to compel without prejudice. I also directed counsel to meaningfully confer in an effort to narrow the issues as required by Fed.R.Civ.P 26 and Local Rule 3.01(g).[2] And I admonished Plaintiffs' counsel for circumventing Local Rules 3.01(a) and 3.04(a) in the September 27 motion. *See* Order, doc. 126.

On October 22, the Plaintiffs filed an "Emergency Motion for Permission to File a Motion to Compel Discovery in Excess of 25 Page Limitation" (doc. 128). This motion essentially reiterated Plaintiffs' September 27 effort, at least in content, and engaged in the same sweeping condemnation of the Defendants employed in the current motion. In the main, what the Plaintiffs wanted to do in their anticipated motion to compel is exactly what I had admonished against in the motion I had denied without prejudice. Irrespective, I denied the Plaintiffs' "emergency motion" on two principal grounds, although I could have listed others: the motion was inappropriately labeled as an "emergency," and it asked for permission to file a motion to compel that would be 175 pages long (which is *seven times* Local Rule 3.01(a)'s page limit). *See* Order dated October 29, 2010 (doc. 129).

Some further explanation for my ruling is warranted. I routinely grant requests for leave to file motions exceeding the page limit because most are reasonable. Plaintiffs' request was not. The Defendants noted in their response to the motion that the Plaintiffs had propounded 772

---

[2] I considered the Defendants' effort to confer a meaningful attempt to abide my prior admonitions for complying with Local Rule 3.01(g); however, I had the opposite conclusion about the Plaintiffs' behavior.

discovery requests, a burdensome amount in the Defendants' view (an assertion I found reasonable). Because I thought it implausible that all 772 requests were reasonable or that the parties (particularly the Plaintiffs) could not narrow their differences in a meet and confer (as apparently they had been able to do to the satisfaction of some of the counsel engaged in the case), I denied the motion for leave to exceed the page limitation. My order denying this motion was not done on a blank slate. I had reviewed beforehand the Plaintiffs' motion for protective order (doc. 92) and the responses thereto (doc. 93) and the Defendants' motion for discovery (doc. 120) and the response thereto (doc. 125). A clear pattern emerged. Neither side had fulfilled their discovery obligations nor the Court's expectations that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2001) at I.A.1. My conclusions were supported by: their failure to first meaningfully confer in a spirit of good faith before seeking any judicial relief; Plaintiffs' failure to respond to the Defendants' four discovery deficiency letters; Plaintiffs' failure to prepare a privilege log for all withheld documents; Defendants' failure to acknowledge that Plaintiffs were attempting to retrieve the original documents which would allow them to answer the 400 requests for admissions regarding authentication of certain documents; and Defendants' failure to acknowledge that Plaintiffs are permitted under the Federal Rules of Civil Procedure to produce business records as they are maintained on their server in the regular course of business in response to the 278 requests for production of documents ( doc. 129).

    While it is unclear exactly what transpired after I issued my October 29, 2010 order, and what efforts, if any, the parties made towards working out or narrowing their discovery issues, the docket reflects that Plaintiffs did not file any more motions seeking to compel discovery or

motions for sanctions against Defendants for failing to participate in discovery prior to the close of the discovery period.  The record also reflects that the parties did not seek to extend the discovery period.  In fact, at the hearing on January 7, 2011, counsel for Plaintiffs stated that he and counsel for Defendants had agreed that they would mutually ask the Court to extend the deadline; but, they never did.  *See* hearing transcript, doc. 163, p.3.  At that hearing, I specifically warned counsel that once discovery had closed, the Court management's of discovery ceased, including any resolution of discovery disputes.  I also noted that the district judge had set forth a case management scheduling order on April 14, 2010, essentially adopting the parties' case management report, and explained that if a party was dissatisfied with the pace, and more particularly the production of discovery, that party had to seek the Court's intervention.[3]  Implicit, however, in this direction is the any party seeking relief do so appropriately.  Thus, I informed counsel "the fact that the other side has been deficient in discovery [as per the Plaintiffs' current claim] is not something that has necessarily been brought to my attention in a way that is expected and that can be ruled upon." (doc. 163, p. 10).

       The parties did not seek an extension of the discovery period.  Nor did the Plaintiffs file a timely motion to compel that comported with our Local Rules and Rules of Federal Civil Procedure.  Instead, the Plaintiffs waited until the discovery period had closed and then filed the instant motion for sanctions – striking Defendants' answer and counterclaim; alternatively, deeming certain demands for admission as having been admitted; or striking Defendants' supplemental discovery responses propounded after the discovery deadline.

---

[3] See the parties' case management report (doc. 74) and district judge's order (doc. 75) adopting their proposed deadline for completing discovery (October 26, 2010).

*C. Discussion*

Whether one looks to Rule 1's language (the rules should be construed to "secure the just, speedy, and inexpensive determination of every action or proceeding") or the Eleventh Circuit's ("district courts must have discretion and authority to ensure their cases move to reasonably timely and orderly conclusion," *see Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 (11th Cir. 2002)), judges are entitled to broad but not unbridled discretion in managing discovery matters. *Id*. (applying "abuse of discretion" standard to a district court's discovery rulings).[4] That breadth of discretion has bearing here. While Plaintiffs may dress their motion as one for sanctions, underneath they implicitly express their frustration with the Court's management of the discovery phase by requiring the parties adhere to case-management deadlines and Local Rule requirements. Notwithstanding, the Plaintiffs' arguments for sanctions are not persuasive.

Rule 37, which the Plaintiffs cite as legal support for sanctions, generally envisions a two-step process. A party first obtains an order compelling discovery under Rule 37(a); if the other side fails to comply with that order, the party then moves for sanctions under Rule 37(b) for the other side's failure to comply with the court's order. While some courts have applied this rule absent an order, the Eleventh Circuit has specifically refused to take that leap in discovery matters. *United States v. Certain Real Property,* 126 F.3d 1314, 1316-18 (11th Cir. 1997).[5]

---

[4] The *Perez* court emphasized "the responsibility of trial courts to manage pretrial discovery properly in order to avoid 'a massive waste of judicial and private resources' and a loss of 'confidence in the courts' ability to administer justice.'" 297 F.3d at 1263 (citations omitted). Whether a motion was filed timely and is appropriate under a pretrial order is a question left to the district court's discretion. *Id.* n 21.

[5] The exception to this two-step requirement would be a motion for sanctions made pursuant to Rule 37(c)(2) (*see infra*). *Dorey v. Dorey,* 609 F.2d 1128, 1134-35 (5th Cir. 1980).

Here, the Plaintiffs missed the first requirement; yet, they still seek the ultimate sanction: the dismissal of a claim or a defense, a sanction the Eleventh Circuit has repeatedly emphasized a court should impose as " a last resort – ordered only if noncompliance with a discovery orders is due to willful or bad faith disregard for those orders."[6] *Id.* at 1317 quoting *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1556 (11th Cir. 1986); *see also Malautea v. Suzuki Motor Co.*, 987 F. 2d 1536, 1542 (11th Cir. 1993). Irrespective of their failure to meet Rule 37's procedural steps, the Plaintiffs simply fail to make the requisite showing for the imposition of such a sanction.[7]

For example, the Plaintiffs seek sanctions due to the manner of the Defendants' production of documents in response to their requests to produce. The Plaintiffs label the Defendants' actions a "document dump." But as noted already, a party may produce documents, including electronically stored ones, as "they are kept in the usual course of business." Rule 34(b). Much of Plaintiffs' complaints about the Defendants' discovery behavior, however, concerns the Defendants' responses to hundreds of admissions, most of which deal with requests

---

[6] To the extent that the Plaintiffs maintain that Defendants violated the Order dated July 15, 2010 (doc. 106), their argument is misplaced. The Defendants assert that on August 16, 2010, they responded and objected to 742 discovery requests, in compliance with my Order. Almost one month later, nearly a month prior to the close of discovery, the Plaintiffs initiated a meet and confer to discuss document production and objections, methods of production, and who should bear the obligation to search voluminous documents produced electronically by the Defendants as maintained in Amacore's regular course of business. *See* doc. 201, p. 3. During the meet and confer telephone conference, the parties reached agreement on numerous discovery issues and agreed to disagree on others. Thereafter, however, lead counsel for the Plaintiffs, Greg Trautmann, overrode the agreements reached and demanded Defendants produce documents within 30 days, therein refusing to comply with Local Rule 3.01(g).

[7] Plaintiffs additionally seek sanctions under Rule 11, but that rule does not apply to disclosures and discovery requests which are the subject of Rules 26 through 37. *See* Rule 11(d).

seeking authentication of hundreds of emails or requests seeking Defendants to admit that the facts are contrary to the allegations made in Amacore's counterclaim. As to this multitude, the Defendants have more or less responded uniformly that it "cannot admit or deny this request because it is vague and ambiguous, therefore denied." Dissatisfied, the Plaintiffs seek sanctions under Rule 36(a)(6).[8] Their motion lacks merit.

Rule 36, which governs requests for admissions, is a "time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial*.'" *Perez*, 297 F.3d at 1268 (citations omitted) (emphasis in original). A responding party has essentially four possible options: admit in part or in full; deny the request in part or in full; set forth reasons why the party cannot admit or deny; or object to the request by specific objection or by a motion for protective order. Rule 36(a)(4) and (6). While the rule offers benefits, it can be the subject of abuse:

> [W]hen a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party like Perez, however, uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable judicial resources.

*Id.* at 297 F.3d 1268.

The Plaintiffs' admissions requests straddle the line between using Rule 36 as a cost-saving mechanism and the weapon the *Perez* court condemned. For example, the Plaintiffs' requests seeking the Defendants to admit facts which are contrary to the allegations made in

---

[8] That rule provides that the "requesting party may move to determine the sufficiency of an answer or objections."

Amacore's counterclaim is the same sort of conduct *Perez* found inappropriate under Rule 36.[9]

Irrespective, sanctions are not warranted under Rule 37(c)(2) for other reasons. Rule 37(c)(2), which deals only with admissions, imposes a look-back approach for dealing with sanctions. If the receiving party inappropriately denies the admission or inappropriately says it cannot truthfully admit or deny, the rule does not give a pretrial hearing on sanctions to the litigant demanding answers to the admissions. Instead, the rule envisions "posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." Rule 37(c) advisory committee's note to 1970 amendment; *see also* Wright, Miller & Marcus Federal Practice and Procedure: Civil 3d § 2290. Plaintiffs' effort at imposing sanctions for the Defendants' responses to many of its requested admissions is, therefore, premature.

   D. *Conclusion*

For all these reasons, I recommend the Plaintiffs' motion to strike the Defendants' answer and counterclaim or, alternatively strike the Defendants' supplemental discovery responses and

---

[9] The *Perez* court observed that it is inappropriate for a plaintiff to require a defendant to admit or deny in a set of requests for admissions what the defendant already denied in answering the complaint. 297 F.3d at 1268-69. Sanctions are limited to those instances covered by Rule 37(c). Accordingly, sanctions would not be appropriate if a party failed to admit a matter because that party had a reasonable ground to believe that it might prevail on that matter. Rule 37(c)(2)(c). "The implicit message of Rule 37 is, therefore, that issues *obviously subject to dispute should be resolved at trial*, not in a discovery motion. *Perez*, 297 F.3d at 1269 (emphasis in original).

portions of the Defendants' initial discovery responses (doc. 161) be denied.

IT IS SO REPORTED in Tampa, Florida on April 1, 2001.

/s/ Mark A. Pizzo
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

Cc: James S. Moody, Jr.